All rise, the court is now in session. Case number 3-15-0784, people of the state of Illinois, Mark Austell v. J. Cox, appellant by Kathryn Stroll. May it please the court, my name is Kathryn Stroll, I'm a state appellant defender, and I represent the defendant appellant in this matter, Mr. J. Cox. There is only one issue in this appeal, and that is whether Mr. Cox received ineffective assistance from counsel, when the public defender affirmatively misadvised him that he could appeal a sentence imposed pursuant to a partially negotiated guilty plea. In 2012, Mr. Cox was charged with aggravated driving under the influence based on a car accident caused by a defendant, and which resulted in the death of another man. J. faced a sentencing range of 3-14 years, and the state offered two plea deals. One was fully negotiated with an agreed sentence of 9 years, and the other was partially negotiated with a 12 year cap. The public defender advised Mr. Cox to accept the cap because he felt 9 years was too much, but in advising Mr. Cox to accept the 12 year cap, the public defender offered additional advice, which is at the heart of this appeal, and that's because the additional advice was, in fact, affirmative misadvice. The public defender told J. if he took the capped deal, he could appeal his sentence. But of course, this is incorrect, since a legally imposed sentence stemming from a negotiated plea can never be appealed. The only type of order in this scenario that could have been appealed would have been a denial of a motion to withdraw the guilty plea. So, we're left with Mr. Cox entering a deal while operating under the incorrect belief that his sentence could be appealed. But since his sentence could not be appealed, Mr. Cox was prejudiced by counsel's deficient performance in not only failing to advise him of the consequences of pleading guilty to a negotiated cap, but affirmatively misadvising him of his appeal rights, and thus his plea was involuntary. For that reason, we're asking that this court vacate his plea. Hill v. Lockhart is the seminal U.S. Supreme Court case that held that the Strickland test used to assess ineffective assistance claims applies in the plea bargain context. Under Strickland, a defendant must show two things, one, that counsel's performance was deficient, and two, a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Hill did note that a logical different outcome in some scenarios would be a showing that a defendant would have been successful at trial. It gave a couple of examples, and one was when trial counsel fails to discover exculpatory evidence or fails to inform the defendant of an affirmative defense, a showing of prejudice such that the errors induced a guilty plea logically depends on whether the evidence or the defense likely would have changed the outcome at trial, and that makes sense. But Hill nowhere held that success at trial is the appropriate standard to apply in all contexts, which is why the United States Supreme Court has since applied a case-by-case analysis in determining whether a defendant was prejudiced. For example, in Loeffler v. Cooper, the U.S. Supreme Court held that the defendant was prejudiced where on advice of counsel that he could not be found guilty at trial, the defendant rejected the plea, was found guilty at trial, and received a sentence three times the length of the plea offer. In that scenario, it clearly makes no sense for the defendant to show he would have gone to trial. He already had. Likewise, Missouri v. Fry presents another scenario where it makes no sense to tie prejudice to a showing that the defendant would have chosen trial over pleading. There, the U.S. Supreme Court found that the defendant was prejudiced where trial counsel never informed him of a more favorable plea deal than the sentence he received when he pled blind. The court, in that case, explained that a showing of prejudice where a plea is either lapsed or then rejected requires looking not at whether the defendant would have proceeded to trial, but at whether he would have accepted a different plea. This also makes sense. The court went on to explain that the Hill standard does not provide the sole means for demonstrating prejudice arising from deficient performance. Rather, the Hill standard for prejudice applies only in cases where the defendant complains that the deficient performance led him to accept a plea offer as opposed to go to trial. So ultimately, Hill established the starting point for demonstrating prejudice in these plea contexts, which is a showing that, but for counsel's deficient performance, the outcome would have been different. As Loeffler and Fry both make clear, just how the outcome would have been different is fact-dependent and requires a case-by-case analysis. Along those lines, it makes no sense to require a defendant to demonstrate he would have gone to trial when the defendant was never considering going to trial in the first place, but was choosing the best plea option. Specifically, it makes no sense to require Mr. Cox to show he would have gone to trial where the prejudice he suffered was a loss of an appeal right. He believed he had some affirmative misadvice that he could appeal a sentence that has nothing to do with the strength of his case at trial. Instead, here the appropriate remedy for the prejudice suffered is to vacate the plea, which would allow, though not require him to go to trial, and it would put him in a position of knowingly and intelligently making whatever decision he chooses to make. While the defendant does acknowledge that our Supreme Court relied on Hill in People v. Hall, it is clear that it improperly relied on an overly broad reading of Hill. In Hall, our Supreme Court altered the Hill standard by imposing the additional requirement that a defendant claim actual innocence or articulate a plausible defense that could have been raised at trial. That standard makes sense when a defendant pleads guilty because of erroneous advice about whether he would win at trial. It does not make sense in all contexts, and particularly not ours. Further, this more strenuous standard not only hints at a sub-supremacy clause violation, but it is also without authority and contrary to the United States Supreme Court precedent. I'm sorry, I didn't hear your question. Are you saying that you would like us to tell the Supreme Court in Illinois that their decision is incorrect? Of course they're straying away from the decision in People v. Hall because People v. Hall is an outlier. It stands on its own. It's not compliant with the U.S. Supreme Court, and there have been cases that haven't even made mention of People v. Hall because it doesn't fit every context. In its specific fact scenario, Hall made sense. It's not a one-size-fits-all. The Edmondson Court in the Second District made no mention of it. The Edmondson case is factually identical to ours. People v. Guzman, a case this Court decided, made no mention of Hall. Hall doesn't make sense in many contexts. Further, when Hall created that standard that a defendant must claim actual innocence or articulate a plausible defense, the authority it relied on for that was a First Circuit case that was reversed by the U.S. Supreme Court on different grounds. Yes, I do think Hall has an overly broad reading of Hill, and Hall works in Hall's particular context, but not every context. You're saying that the different outcome would be that Cox would have accepted the nine-year plea? He could have accepted the nine-year plea knowing that he would not be able to appeal his sentence instead of taking the gamble with the 12, believing he could appeal. He could have pled blind, also preserving an appeal right. He could have gone to trial, again, to preserve his appeal right that he thought he had, the right to appeal his sentence. The outcome would have been different under any scenario because he would have been placed in a knowing, an intelligently informed position. Prejudice, I believe, should be presumed when deficient performance fails to advise a defendant of the consequences of their plea. Here, the counsel didn't only fail to advise him of a consequence, which is that he wouldn't be able to appeal his sentence. He affirmatively advised him that he could. Jay certainly didn't receive the benefit of this bargain, thinking that he was agreeing to this cap and additionally could appeal the sentence. As mentioned, to an extent, the U.S. Supreme Court case does not require a defendant to claim a plausible defense or actual innocence. In examining ineffective assistance claims in the guilty plea context, as Loeffler and Fry have demonstrated since they applied their own standard to determine whether a defendant was prejudiced, it's fluid and it's contextual. So much so that the U.S. Supreme Court has also held in Padilla v. Kentucky that the prejudice inquiry is satisfied where a defendant shows the decision to forego a plea and proceed to trial could have been rational under the circumstances. Regardless of whether it's the best decision, it's the defendant's decision to make. So in sum, Mr. Cox was affirmatively misinformed about his ability to challenge his sentence. The law is clear that he could not challenge his sentence, yet the public defender did testify that he told Mr. Cox he could do just that. Mr. Cox also testified he chose the cap plea because he could appeal whatever sentence he received. Mr. Cox was prejudiced because he would not have entered the cap plea had he known he could not challenge his sentence, and therefore the plea was involuntary and not knowingly made. And for those reasons, and the reasons argued in our briefs, Mr. Cox respectfully requests this Court to vacate his plea and renounce the cause for further proceedings. Thank you very much. Good morning, Your Honor. Good morning. In this appeal, the defendant asserts that his guilty plea counsel, Michael Browns, was ineffective, and the defendant asserts Renzi's performance fell below the reasonable standard where Renzi allegedly advised the defendant that he could appeal his sentence under the negotiated plea agreement with a cap of 12 years, that he was prejudiced by Renzi's performance. Under Supreme Court Rule 604D, the defendant could appeal his sentence, though it was part of a negotiated plea. Rule 604D defines a negotiated plea to include pleas where the prosecution bound itself to a sentence range, as was the case here where he had a sentence cap. Rule 604D states, no appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of imposition of sentence, files a motion to withdraw the plea. Rule 604D continues, if the motion is denied, notice of appeal from the judgment and sentence shall be filed. The defendant had to first file a motion to withdraw his plea, which he did twice. He did one pro se and one through Attorney Renzi. Renzi did misadvise the defendant that he could preserve his appeal rights through the motion to reconsider his sentence, but this misadvice was cured by the timely filing of both of these motions to withdraw the plea. These motions preserved the defendant's right to appeal a sentence, which was the reason the defendant stated for accepting the guilty plea with a sentence cap. The people note that the defendant has not challenged his sentence in the earlier appeal or on this appeal. The defendant cannot show that Renzi's performance prejudiced him or that the result of the proceeding would be different had Renzi advised him differently. Therefore, Renzi cannot be found to be ineffective. But he admits that he didn't tell him that he would have to file a motion and be successful in the motion to withdraw his guilty plea. If the motion was successful, then he would be back to ground zero. Right, but he did not tell him that. He didn't tell him that in order to appeal, this first part has to take place. He admits that, right? He told him the wrong procedure. He said he had to file a motion to withdraw his sentence. That's the incorrect procedure. He had to file a motion to withdraw his plea, which did allow him to appeal a sentence. It's not that he hasn't been allowed to appeal a sentence or he couldn't appeal a sentence. He just had to use the correct procedure. And he actually did use that by his pro se filing and by Mr. Renzi's filing. And he was also admonished by the trial judge that he had to file a motion to withdraw his plea if he wanted to appeal a sentence. So he knew this before he accepted his plea. But did he, because if he didn't tell him about the process by which, you know, the procedure, I guess it would also, wouldn't it be true that he wouldn't know that you don't automatically get to withdraw your plea of guilty? Well, no, because he was admonished that he had to do the motion to withdraw. Well, that came after he was admonished by the judge, but that was after, right? But there was no inference in this case that he was not advised that he couldn't withdraw his plea. The whole basis of this is he is claiming that he was misadvised, that he could not appeal his sentence. But in fact, he always could. He just had to use a motion to withdraw in order to get to that appeal. But that isn't as of right. That is a discretionary mechanism. Well, of course, the person has to file that mechanism, just like they would have to file the motion to reconsider a sentence that counsel advised him to do. And we are not saying that was not misadvised. That was deficient advice. So he met the first part of Strickland, but he didn't meet the second part of prejudice because he did have the opportunity then through his later filed motions that were timely to withdraw his plea. And once those were denied, he could appeal both the denial of his withdrawal, the motion to withdraw, and his sentence under Rule 604D, the clear language of 604D. So the defendant didn't lose anything. He just thought he had to use a different procedure to get to the appeal. Well, the procedure isn't an automatic allowance. It doesn't allow him to automatically appeal. If he had gone to trial, was found guilty, and he wanted to appeal, he would have that right. Correct. Without having to ask the judge to grant a motion to withdraw his plea of guilty. Absolutely correct. But there was never any indication on the defendant's part that he thought he had an automatic appeal. He always knew he had to file something to get his appeal rights in this case under the negotiated guilty plea with the cap. He knew he had to do a filing. It was not an automatic appeal. And it's never been a claim in my reading of the record. No, the right to the appeal. I mean, yes, you have to file the notice of appeal, but that is guaranteed if he had been found guilty, which it's not. His right to appeal may not be guaranteed if he can't withdraw the guilty plea. Isn't that the prejudice? No, because, Your Honor, if he files his motion to withdraw his plea, and it's granted, he doesn't need an appeal. He can't appeal because he won. Right? Am I incorrect in that? But if you don't know that, I mean, when you enter the plea of guilty with the cap, and if you don't know that, you may not be allowed to appeal this because you have to get permission to withdraw the plea of guilty first. I think that's the crux of the argument, that it's not something that he automatically would have the right to do. Respectfully, I don't think that was the argument at all. I believe the argument is that he was simply misadvised as to which of the procedures he had to use to get his right of appeal in this case. In his reply brief, defendant cites this Court's decision in Haley, holding that if a defendant's motion to withdraw a plea is unsuccessful, the defendant may appeal from the Court's denial of the motion, but he may not challenge a sentence. And Haley relied on the Supreme Court case of Evans, which held that a defendant could not challenge a sentence resulting from a plea agreement through the use of a motion to reconsider sentence. And Judge Holdred, in his dissent, in Haley, pointed out that a motion to withdraw a defendant's guilty plea is sufficient under Evans and also under People v. Linder to allow an appellate court to review a defendant's sentence. In Richard, which was modified in response to the Haley decision, and Richard said that circuit courts cannot multiply a sentence that is part of a negotiated plea without first granting a defendant's motion to withdraw. But Richard does not address a defendant's ability to appeal the sentence after following a motion to withdraw. So under the plain language of Rule 604D and Linder, which we cited in our brief also, a defendant could not challenge a sentence that is part of this deal. Now, following remand from his direct appeal, at the hearing on his newest motion to withdraw his guilty plea, the defendant testified that he would have gone to trial if Renzi had not told him he could appeal the sentence. Now, this Court involved us, quoting our Supreme Court, Hughes and Hall, stating, establishing prejudice requires more than a bare allegation that the defendant would have rejected the plea and could have been raised at trial. And involved us, the Court said, the question of prejudice depends in large part on predicting whether the defendant would have been successful at trial. And based on the factual record, the factual basis, rather, that was presented at the time of his plea, and at the testimony and sentencing, the defendant could not assert a claim of actual innocence. And he could not present a plausible defense at trial. Therefore, the defendant could not have been successful at trial. And people asked this Court to find that Mr. Renzi was not ineffective and to affirm the trial judge's denial of the defendant's motion to withdraw his guilty plea on remand. How do you distinguish Edwards? How do I distinguish Edwards? I apologize, Your Honor, I'm not up on the facts about Edwards this morning. I'd certainly file a motion distinguishing if you'd like. I apologize. Any other questions, Your Honor? Thank you, Mr. Renzi. Thank you. I think that there seems to be confusion about if a defendant can ever appeal his sentence in the context of a negotiated or partially negotiated plea. He cannot. All he can do is file a motion to withdraw and have that granted. Once that's granted, there is no longer a sentence to appeal, and the parties are returned to the status quo. Were a defendant merely allowed to file a motion to withdraw, have that, and additionally a motion to reconsider sentence, have the motion to withdraw be denied, and then therefore because the two were filed concurrently, have the motion to reconsider be heard and granted, the State would lose its benefit of the bargain. In our reply brief, counsel mentioned Haley. Yes, Justice Holdreds dissented, but you concurred or excuse me, I don't recall if it was you, Justice Litton, but that case said not only must a defendant dissatisfied with the outcome of his plea file a motion to withdraw the guilty plea, but he must convince the trial court the motion should be granted to correct a manifest injustice, and if the motion is unsuccessful, the defendant may appeal the court's denial of the motion. However, he may not challenge the severity of the sentence. We then have three other cases that say the same thing. Being told that he could affirmatively challenge his sentence, affirmative misadvice is almost worse than lack of proper advice at all, he did not knowingly or voluntarily enter this plea. He entered something that didn't exist at the time. Undoubtedly, prejudicing him, the correct remedy in this situation is to withdraw the plea so he can be put back in a position of knowingly making whatever decision he wants, even if it's unwise, even if it's going to trial where he'd be found guilty. Success at trial should have no bearing on how deficient performance affected the plea process as described in Laffler v. Cooper, Missouri v. Fry, other cases. Again, Hall is an outlier. Courts are moving away from it. Guzman, this court, Edmondson, Dodds, the First Circuit, courts aren't able to fit Hall into all these varieties of scenarios where it makes no sense to ask the defendant to show a plausible defense or actual innocence. Let me just see whether... And we did mention in the brief, he did ask the court to take judicial notice, just that Supreme Court Rule 402 does require a judge to admonish the defendant that in order to challenge his plea, he must file a motion to withdraw, and that comes at the sentencing hearing well after the plea has been entered, unlike the federal rules of evidence, which require the judge to inform the defendant prior to accepting the plea of his lack of ability to appeal the sentence and that he only may file a motion to withdraw. So I think there's some logic behind the federal rule in terms of enabling a defendant to be fully informed of all of the circumstances in which he chooses. Okay, thank you.